# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELYN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **No. 03 C 2984** |
| v. | ) | |
| | ) | **Maria Valdez, Magistrate Judge** |
| NILES TOWNSHIP HIGH SCHOOL | ) | |
| DISTRICT 219, COOK COUNTY, | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jacquelyn Smith ("Smith"), has sued Defendant, Niles Township High School District 219, Cook County, Illinois ("District 219" or "the District"), for its alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. On December 11, 2003, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court is District 219's motion for summary judgment, filed under Rule 56 of the Federal Rules of Civil Procedure. For the reasons provided below, the motion is granted in part and denied in part.

### Background

Unless otherwise noted, the following facts are undisputed or have been deemed admitted pursuant to Local Rule 56.1, which this Court strictly enforces. District 219 is an Illinois school district that operates three north-suburban Chicago educational campuses/facilities: Niles North High

School, Niles West High School ("Niles West") and the Off-Campus Learning Center. Def.'s LR 56.1(a)(3) ¶¶ 4-5. Presently, and at all times relevant, District 219 has employed Smith as a Security Assistant/Truant Officer at its Niles West campus. *Id.* ¶¶ 3, 49.

## I. District 219's Creation of a Department of Security and Appointment of Dennis Degelmann as the Director of That Department.

In an effort to ensure that security needs were being met at its three facilities, District 219 hired a consulting firm to review its security program. *Id.* ¶ 36. In 2001, the consulting firm issued a report, suggesting various changes to the District's security program. *Id.* ¶ 36. In accordance with that report, District 219 created a new department, the Department of Security, in order to monitor the safety of students and staff at each of the District's facilities. *Id.* ¶¶ 36, 43. Moreover, the District contracted with an independent security company, American Heritage Security ("American Heritage"), to provide additional security officers. *Id.* ¶¶ 39-40.

In July 2001, the District hired Dennis Degelmann ("Degelmann") to head the department as its Director of Security. *Id.* ¶ 36. As Director of Security, Degelmann coached, counseled and disciplined security officers. *Id.* ¶ 38. He also designed and implemented the operational aspects of District 219's security program, such as creating patrol routes and assigning officers to particular security posts or patrol routes. *Id.* ¶ 38. While Degelmann was the Director of Security, each school's Security Coordinator accomplished the daily supervision of that school's officers.[1] *Id.* ¶ 54.

---

[1] In approximately January or February 2002, District 219 hired Roger Garcia to be the Security Coordinator at its Niles West campus. Def.'s LR 56.1(a)(3) ¶ 55.

## II.     Degelmann's Alleged Invitation To Smith.

Hotly disputed by District 219, Smith alleges that shortly after Degelmann started working as Director of Security for District 219, Degelmann invited her out to a local restaurant during the summer of 2001 in what she characterizes as "an attempt to commence a relationship with Plaintiff outside the knowledge of her husband." Pl.'s LR 56.1(b)(3)(B) ¶ 9.[2] *But see* Def.'s LR 56.1(a)(3) ¶ 98 (admitting that "Degelmann never made any sexual advances towards Smith"). Specifically, she alleges "that for reasons not apparent to her at the time, Degelmann asked her if her husband knew that she was meeting with Degelmann," adding that "Degelmann's behavior immediately changed" such that he "appeared [to be] in a hurry to leave [and] never continued on to discuss any school matters with her, nor otherwise explained why he had considered it important for them to meet that afternoon . . . ." Pl.'s LR 56.1(b)(3)(B) ¶ 12. Ultimately, she contends that Degelmann's failed attempt that afternoon to begin an extra-marital relationship "form[s] all or part of the reasons why Degelmann acted towards Plaintiff in the manner that generated her charges of discrimination and retaliation, and ultimately this action." *Id.* ¶ 9.

---

[2]Indeed, for this and practically every other statement of additional fact submitted by Smith pursuant to Local Rule 56.1(b)(3)(B), District 219 moves this Court to strike it as violative of that local rule. *See, e.g.,* Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 9. Additionally, for certain paragraphs, the District: (1) seeks to strike various affidavits submitted by Smith in opposition to District 219's motion for summary judgment, see, e.g., *id.* ¶ 10, and (2) alleges violations of both the Federal Rules of Civil Procedure and the Federal Rules of Evidence as grounds upon which to disregard Smith's statement of additional facts. *See, e.g., id.* ¶¶ 7-8. However, unless otherwise noted, because the Court does not rely on the statements subject to such arguments, it denies District 219's motions to strike as moot. *See Schmidt v. Canadian Nat. Ry. Corp.,* No. 04 C 7508, 2006 WL 495943, at *6 (N.D. Ill. Feb. 28, 2006) (striking a defendant's motions to strike as moot "[b]ecause the Court did not rely on the facts defendant sought to strike from plaintiff's response to defendant's LR 56.1(a) Statement and his affidavits").

### III. Smith's Allegations of Harassment During the 2001-02 School Year and Retaliation During the 2002-03 School Year

Regardless of Smith's beliefs as outlined in the preceding paragraph, Smith alleges that when she returned to work for the 2001-02 school year, Degelmann discriminated against her by assigning her to Niles West's front desk. Second Am. Compl. at Count I ¶ 7(d); Def.'s LR 56.1(a)(3) ¶¶ 78-80. While assigned to that post, Smith also asserts that both Degelmann and George Mendes ("Mendes"), another security officer primarily assigned to Niles West and holding the same position as Smith, harassed her from January through February 2002. Second Am. Compl. at Count I ¶¶ 7(b)-(c); Def.'s LR 56.1(a)(3) ¶¶ 50, 90, 111. Specifically, and only as to Degelmann, she alleges that he closely monitored her actions, often though use of the school security camera system, calling her and using others to ask her about her location and conduct. Def.'s LR 56.1(a)(3) ¶¶ 91-92. Degelmann, however, denies monitoring Smith through the security cameras. Def.'s LR 56.1(a)(3) ¶ 109. As to Smith's allegations regarding Mendes, Smith asserts he verbally harassed her in that he raised his voice and used coarse language when speaking with her, and also confronted, threatened and humiliated her in front of others. Def.'s LR 56.1(a)(3) ¶ 113.

Additionally, Smith contends that Degelmann prohibited other District 219 employees from relieving Smith while she was at her front desk security post, contending that he did so notwithstanding his knowledge of her medical condition which required bathroom breaks on short notice. Second Am. Compl. at Count I ¶ 7(e); *see also* Def.'s LR 56.1(a)(3) ¶¶ 104-05. Finally, beginning sometime in January 2002, Smith alleges that she was discriminatorily denied the ability work overtime during extra-curricular school sporting events, which "substantially diminish[ed] her income." Second Am. Compl. at Count I ¶ 7(a). *Cf.* Def.'s LR 56.1(a)(3) ¶ 64.

Apparently fed up with her belief that she was experiencing a discriminatory and hostile work environment, on February 14, 2002, Smith cross-filed a charge of discrimination with both the Illinois Department of Human Rights ("IDHR") and with the Equal Employment Opportunity Commission ("EEOC"). Smith based her charge on allegations of gender discrimination, harassment and a failure to accommodate her alleged disability. Second Am. Compl. at Count II ¶ 7; Def.'s LR 56.1(a)(3) ¶ 7. Yet, according to Smith, her alleged mistreatment did not stop with the filing of her charge of discrimination and the end of the 2001-02 school year. Thus, Smith alleges that upon returning to school for the 2002-03 school year, Degelmann began a campaign of retaliation.

When Smith returned to Niles West for the new school year, in September 2002, Degelmann reassigned her from the security post located at the Niles West's front door, to a full time duty post at the school's south entrance, an assignment she contends was "unnecessary and without justification considering the absence of need for the presence of a security department employee such as Plaintiff for such periods of time." Second Am. Compl. at Count II ¶ 8(a); Def.'s LR 56.1(a)(3) ¶ 128. Further, she alleges Degelmann retaliated against her by harassing her in a variety of methods. First, Degelmann would not permit her to drink beverages while on duty. Am. Compl. at Count II ¶ 8(b); Def.'s LR 56.1(a)(3) ¶ 174. Second, she posits that Degelmann would walk to her security post and stare at her without speaking with her. Am. Compl. at Count II ¶ 8(c); Def.'s LR 56.1(a)(3) ¶ 146. According to her deposition testimony, Smith stated that Degelmann only said "hello" to her on half the times he would enter Niles West. Def.'s LR 56.1(a)(3) ¶ 146. On the other occasions, she testified that he would either stare at her blankly or continue speaking on his phone. *Id.* Third, Smith avers that Degelmann made a number of disparaging remarks about her during the course of the 2002-03 school year. For example, she claims that Degelmann verbally harassed her

while in the presence of other employees, by referring to her as "Cleopatra" and as a "dumb broad." Am. Compl. at Count II ¶ 8(d)-(e); Def.'s LR 56.1(a)(3) ¶¶ 147-48. Finally, she alleges that he also made "insulting and demeaning remarks" about her while continuing to monitor and observe her through the school's security camera system. Am. Compl. at Count II ¶ 8(f); Def.'s LR 56.1(a)(3) ¶ 162.

Thus, on December 3, 2002, Smith cross-filed a second charge of discrimination with the IDHR and EEOC, this time for the allegedly retaliatory acts occurring during the 2002-03 school year. After receiving her right-to-sue letters for both of her charges, Smith timely filed a two-count complaint on May 5, 2003. Count I alleged a violation of Title VII based on sex discrimination while Count II alleged retaliation. *See generally* Compl. On July 30, 2003, she amended her complaint, amending it again on September 8, 2004 in order to add an allegation of retaliation under the ADA. *Compare* First Am. Compl. *with* Second Am. Compl.

Thereafter, on October 15, 2004, District 219 moved for summary judgment on Smith's discrimination and retaliation counts. District 219 argues that summary judgment is appropriate on Smith's discrimination count because Smith: (1) has not shown that she was disparately treated from her male co-workers with regard to overtime compensation or job assignments, (2) has not shown that her work environment was objectively hostile, and (3) cannot hold District 219 liable for the alleged hostile work environment of Mendes, a co-worker. Def.'s Mot. Summ. J. at 2-5. As to Smith's retaliation count, District 219 moves for summary judgment on both procedural and factual grounds. Procedurally, District 219 contends that Smith's retaliation claim based on the ADA is untimely and that her retaliation claim based Title VII is outside the scope of her discrimination charge. *Id.* at 5-6. Factually, District 219 contends that Smith is unable to establish a *prima facie*

case of retaliation in that she has not suffered an adverse employment action, adding that even if she were able to establish a *prima facie* case, it has asserted "a legitimate, non-invidious reason for all actions concerning Smith." *Id.* With this factual and procedural background in mind, the Court turns to analyze the issues before it.

## Standard of Review

Rule 56 imposes the burden of establishing the lack of a genuine issue of material fact necessitating trial. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). At this stage, courts does not weigh evidence or determine the truth of matters asserted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Instead, courts must consider the evidentiary record in the light most favorable to the non-moving party and draw all reasonable inferences in [his or her] favor as well. *Ezel v. Potter,* 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted). The general standard is also applied with rigor in employment discrimination cases, where intent is inevitably the central issue. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir. 1993) (citation omitted).

To avoid summary judgment non-movant Smith "must produce more than a scintilla of evidence to support [her] position" that a genuine issue of material fact exists. *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (citation omitted). Put more colorfully, "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003). Nevertheless, if a non-moving party fails to make a sufficient showing on an essential element of their case, the moving party is entitled to judgment as a matter of law. *Lewis v. Holsum of Fort Wayne, Inc.,* 278 F.3d 706, 709 (7th Cir.2002) (citing *Celotex Corp.,* 477 U.S. at 323).

<u>Analysis</u>

**I.**     **Smith's Sex Discrimination Count**.

Pursuant to Count I of her second amended complaint, Smith alleges that District 219 discriminated against her on the basis of her gender, female. *See generally* Second Am. Compl. According to Title VII, it is an unlawful employment practice for an employer such as District 219 "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(1). Smith may show discrimination based on sex by proving "disparate treatment." *Kozlowski v. Fry,* 238 F. Supp. 2d 996, 1006 (N.D. Ill. 2002) (citing *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983-86 (7th Cir.2001)). She may also "establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Moser v. Ind. Dept. of Corr.,* 406 F.3d 895, 902 (7th Cir. 2005).

**A.**     ***Smith's Allegations of Disparate Treatment.***

District 219 first attacks Smith's disparate treatment claim by arguing that she "was not discriminated against with regard to the terms an conditions of her employment." Def.'s Mem. Supp. Summ. J. at 2. Because Smith has not presented any direct evidence, *i.e.* "evidence that establishes [a fact] without resort to inferences from circumstantial evidence," *Hildebrandt v. Illinois Department of Natural Res.,* 347 F.3d 1014, 1029 (7th Cir. 2003), she must proceed under the burden shifting analysis first presented in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Thus, in order to establish a *prima facie* case for disparate treatment sex discrimination, Smith "must present factual evidence demonstrating that: (1) she is a member of a protected class; (2) she was meeting [District 219's] legitimate performance expectations; (3) she suffered an adverse

employment action; and (4) [District 219] treated similarly situated employees outside of the protected class more favorably than she." *Frederick v. Henderson*, 232 F. Supp. 2d 901, 907-08 (N.D. Ill. 2002) (citing *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir.2000)). At all times, Smith "bears the ultimate burden of proving that [District 219] intentionally took an adverse employment action against her because of her . . . sex." *Id.* (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir.1998)).

In her second amended complaint, it appears that Smith alleges that she was treated differently than similarly situated male employees in two respects. First, she alleges that her September 2002 assignment to the security post located at Niles West's front desk was because of her sex, female. Second Am. Compl. at Count I ¶ 7(d). Second, Smith alleges that she was denied the ability to work overtime at extra-curricular school sporting events. *Id.* at ¶ 7(a). However, Smith is unable to set forth a *prima facie* case of disparate treatment for either.

First, as to the issue of her assignment to the security post located at Niles West's front entrance, the Court notes that Smith is unable to show that she suffered a materially adverse employment action. "Typically, adverse employment actions are economic injuries." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005) (quoting *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 911 (7th Cir.2002)). While an "'adverse job action is not limited solely to loss or reduction of pay or monetary benefits [encompassing] other forms of adversity as well,'" see *id.* (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996)), the "adverse action must materially alter the terms and conditions of employment." *Id.* (quoting *Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir.2001)). As one court noted,

a materially adverse change in the terms and conditions of employment must be more

disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by termination of employment, a demotion evidenced by a decrease in wage or salary, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Rabinovitz v. Pean*, 89 F.3d 482, 488 (7th Cir. 1996) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Smith attempts to distinguish this case by arguing that "[s]he was deprived of her job responsibilities, despite being an employee of long and good standing, contrary to the best interests of herself and her job status, in order that she could be monitored and kept under surveillance." Pl.'s Resp. Def.'s Mot. Summ. J. at 8 (emphasis in original). Yet, Smith's subjective belief that the front door position was contrary to her best interests is not relevant as "[n]ot everything that makes an employee unhappy qualifies as an adverse action for Title VII." *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). Moreover, the alleged reason behind her assignment, *i.e.* so "that she could be monitored and kept under surveillance" is separate from the pertinent issue before the Court: whether the front desk position was more than a "mere inconvenience or an alteration of job responsibilities." *Rabinovitz*, 89 F.3d at 488.

In arguing that she was subjected to an adverse employment action by virtue of her assignment to Niles West's front desk, Smith attempts to distinguish her case from that of the plaintiff in *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498 (7th Cir. 2004), asserting that her assignment involved more than "mere temporary inconveniences." (quoting *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498 (7th Cir. 2004)). Indeed, in reaching its decision in *Rhodes,* the Seventh Circuit pointed out that Rhodes' five cited adverse employment actions were nothing more than "mere temporary inconveniences" and added that her allegations did "not rise to the level of an

adverse employment action." *Id.* at 505.

In the present case, while Smith's allegations may not have been temporary, her allegations nevertheless fail to rise to the level of an actionable adverse employment action. Indeed, Smith cannot establish that her assignment to Niles West's front door security post was anything more than just "an alteration of job responsibilities." *Id.* First, and as admitted, District 219's job assignments are made on a year-to-year basis and for the 2001-02 school year Degelmann assigned Smith to staff the desk at Niles West's front door, an "open door" which Smith admitted could not be left unattended. Def.'s LR 56.1(a)(3) ¶¶ 79, 81, 85. In that position, she continued to perform a security function as her responsibilities included, but were not limited to "checking all unauthorized personnel entering the building." *Id.* ¶¶ 79, 81. Second, while she was primarily assigned to the front door, she was also "assigned other duties away from the desk, including but not limited to traffic detail." *Id.* ¶ 89.[3] Third, in responding to District 219's proposition that she "does not consider the front desk assignment to be less prestigious than the patrol position," while Smith disputes that she was assigned to that post solely because of the position's prestige, she does "not dispute that the function performed by a security employee while manning the front desk is no less important than a patrol function." Pl.'s LR 56.1(b)(3)(A) ¶ 83. Finally, while an "adverse job action is not limited solely to loss or reduction of pay," see *Whittaker*, 424 F.3d at 647, Smith admits that she "was never demoted and never received a reduction in pay." Def.'s LR 56.1(a)(3) ¶ 62. As a result, the Court finds that Smith's assignment to the Niles West's front door security post was not an adverse employment action.

___

[3]While Smith does not dispute that she was assigned such other duties, she denies it "[t]o the extent this statement can be interpreted to mean that Degelmann was responsible for such other assignments." Pl.'s Resp. Def.'s LR 56.1(a)(3) ¶ 89.

As to the alleged discriminatory denial of overtime at extracurricular events, Smith is unable to show that District 219 granted similarly situated male employees the ability to work overtime at such events. Indeed, Smith's admissions to District 219's statement of facts unequivocally support his position. For example, she admits that in 2001, District 219's former superintendent "set forth an 'edict' that eliminated overtime and stipend pay from the Department of Security budget," further admitting to the statement that "[t]he no overtime edict *applies to all Niles Township employees, regardless of their sex*." *Id.* ¶ 66 (emphasis added). Moreover, while Smith was not allowed to work overtime during the relevant time period, neither was Mendes, who, like Smith, served as a security officer at Niles West. *Id.* ¶¶ 50, 68. Finally, and perhaps most importantly, Smith also admits that she "does not have any direct knowledge of any Niles Township security personnel receiving overtime pay with regard to extracurricular activities." *Id.* ¶ 65. As a result, because Smith's assignment to Niles West's front door was not an adverse employment action and because Smith cannot show that similarly situated males were allowed to work overtime at extracurricular events, the Court finds that Smith is unable to set forth a *prima facie* of disparate treatment. *See, e.g., Conley v. Vill. of Bedford Park,* 215 F.3d 703, 711-12 (7th Cir. 2000) (affirming the district court's grant of summary judgment on an employee's overtime claim in a disability discrimination case under the ADA where the employee failed "to come forward with any allegations to substantiate his allegations" that he was denied overtime because of his alleged disability, adding that the employee "did not set forth any specific times that [his employer] gave others overtime opportunities, but denied the same to him"). Thus, the Court turns to Smith's allegations of a hostile work environment.

**B.** *Smith's Allegations of a Hostile Work Environment.*

As noted above, Smith may also "establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Moser*, 406 F.3d at 902. District 219 first attacks Smith's allegation that she was subjected to a hostile work environment by contending that "[t]he conduct alleged by Smith is neither sufficiently severe or pervasive to create a hostile work environment," citing to Smith's allegation that Degelmann monitored her by camera and Mendes' yelled at her. Def.'s Mem. Supp. Mot. Summ. J. at 6-7. Additionally, District 219 argues that "Smith does not allege that other similarly situated males were not exposed to the same working environment." *Id.* at 7.

"An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005). Thus, "[i]n determining whether the environment was objectively hostile, a court must consider all the circumstances, including the frequency or severity of the conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with the employee's work." *Whittaker*, 424 F.3d at 645. "Indeed, the threshold for plaintiffs is high, as the workplace that is actionable is one that is *hellish*." *Id.* (emphasis added). Because Smith appears to claim that she suffered from "a hostile work environment based on the conduct of coworkers *and* supervisors, then under the Supreme Court's totality of circumstances approach, all instances of harassment by all parties are relevant to proving that his [or her] environment is sufficiently severe or pervasive." *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d

-13-

1036, 1044-45 (7th Cir. 2000) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)) (internal citation omitted; emphasis in original).

### i. **Degelmann's Alleged Harassment**.

First, Smith alleges a hostile work environment by contending that Degelmann "closely monitor[ed] her by camera, call[ed] Plaintiff to question her conduct, and call[ed] others to ask about Plaintiff's whereabouts and conduct." Second Am. Compl. at Count I ¶ 7(a); Def.'s LR 56.1(a)(3) ¶¶ 90-92. However, in viewing the record in a light most favorable to Smith as the non-movant, the Court nevertheless finds that she cannot withstand summary judgment on this issue, because she has not shown that the monitoring (assuming it indeed occurred) helped to create an objectively hostile environment. Like other courts, this Court declines to find a hostile work environment founded on an allegation that a supervisor's monitored or surveilled an employee's activities. *See, e.g., Atkins v. Potter*, No. 01 C 4029, 2002 WL 1803755, at *6 (N.D. Ill. Aug. 2, 2002) (granting summary judgment in a race and sex discrimination case where an employee based her hostile work environment claim in part on an allegation that her supervisor "monitored her closely"); *Harmon v. APAC Teleservices Corp.*, No. C95-0158, 1996 WL 33423389, at *6 (N.D. Iowa Aug. 14, 1996) (finding in a race discrimination case that "[e]vidence concerning a supervisor who would stand or sit by the plaintiff's desk to monitor when plaintiff arrived at his workstation and other evidence of following him to the restroom, calling him back from breaks . . . are insufficient to create a hostile work environment . . . because this evidence is not shown to have any racial animus") (citing *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922 (7th Cir. 1996)).

In arriving at its position, the Court notes that while Smith has presented admissible evidence showing that Degelmann paid attention to Smith's whereabouts through John Peterson, a security

-14-

officer formerly employed by American Heritage, she has not offered any admissible evidence showing that Degelmann monitored her through Niles West's security system.[4] Specifically, in denying Paragraph 109 of District 219's Local Rule 56.1 statement of facts, in which District 219 asserts that "Degelmann never monitored Smith's whereabouts via the security camera system," Smith cites to six paragraphs of her Local Rule 56.1 statement of additional facts, facts she contends support her denial. However, three of these paragraphs do not even discuss the camera system, let alone Degelmann's alleged observation of her on that system, *see* Pl.'s LR 56.1(b)(3)(B) ¶¶ 20, 28, 43, one paragraph does not establish that Degelmann *himself* monitored Smith's whereabouts on the camera system, *see id.* ¶ 24, while another paragraph misstates the content of the underlying deposition testimony, *see id.* ¶ 40.[5] Finally, the last paragraph cited relies on inadmissible hearsay,

---

[4] Specifically, John Peterson attested that he monitored Smith after Degelmann instructed him to see how much time she took for lunch and breaks. Pl.'s LR 56.1(a)(3)(B) ¶ 20. District 219 moves to strike Paragraph 20 and Peterson's affidavit based on Local Rule 56.1(b)(3)(B), contending that the paragraph "is unsupported by the record." The District also argues that the statement is based on hearsay and lacks foundation. However, the Court declines to strike Paragraph 20 of Plaintiff's statement of additional facts. As to the argument based on the Local Rule, the Court notes that the submission of an affidavit in opposition to summary judgment is clearly within the scope of the local rule. *See* N.D. ILL. R. 56.1(b)(3)(B) (noting that each party filing an opposition to summary judgment "shall serve and file . . . a statement . . . of any additional facts that require the denial of summary judgment, including references to the *affidavits* []") (emphasis added). Further, the Court notes that Paragraph 20 is not hearsay in that it is being offered for a relevant non-hearsay purpose, *i.e.*, to show the statement's effect on its listener - Peterson monitored Smith per Degelmann's request. Further, Peterson's statement appears to be from his personal knowledge as it is based on what Degelmann allegedly instructed him to do.

[5] In Paragraph 24 of Smith's Local Rule 56.1 statement of additional facts, she contends that Degelmann instructed Peterson to look for Smith "on the security camera and go see where she was if he did not see her on that camera." Pl.'s LR 56.1(b)(3)(B) ¶ 24. Assuming the admissibility of this fact, Paragraph 24 would only establish that Degelmann ordered others to monitor Smith by use of the camera system and does not establish that Degelmann himself observed Smith through those cameras. *See id.* Further, in Paragraph 40, she contends that "Garcia observed Degelmann monitoring security personnel on the school's camera system"

apparently offered for no other reason than to attempt to prove the truth of the matter asserted. *See id.* ¶ 52 (stating "Degelmann used the security cameras to monitor Plaintiff, and disclosed this to Garcia" and adding "[w]hen plaintiff was at the south end, Degelmann would comment to Garcia about his observations of Plaintiff at least on average once a week"). Thus, the fact that Degelmann did not monitor "Smith's whereabouts via the security camera system," must be deemed admitted. *See* N.D. ILL. R. 56.1.

Yet, even if Smith could establish that Degelmann monitored her whereabouts through the security camera system, Smith's allegation is akin to the allegations in *Mannie v. Potter*, 394 F.3d 977 (7th Cir. 2005). In *Mannie*, the Seventh Circuit declined to find an objectionably hostile work environment where "[m]ost of the conduct that form[ed] the basis of [the plaintiff's] claim consist[ed] of derogatory statements made by supervisors and co-workers outside of her hearing" while the rest is "isolated and not particularly severe." *Id.* at 983. *See also Moser*, 406 F.3d at 903 (noting that the Seventh Circuit "has considered such 'second-hand' harassment, although relevant, to be less objectionable . . . ."). Thus, even if Degelmann monitored Smith's whereabouts from the security camera system, that monitoring occurred both at a distance and outside her presence. Accordingly, the Court declines to find that Smith's allegations of being monitored by Degelmann was objectively hostile, particularly when "Degelmann monitored the activities of other personnel, besides Smith." Def.'s LR 56.1(a)(3) ¶ 94.[6]

_____

citing to Garcia's deposition testimony. Pl.'s LR 56.1(b)(3)(B) ¶ 40. However, in reviewing Smith's citation to Garcia's testimony, at no point does Garcia testify that he *personally observed* Degelmann monitoring *any* security officer, let alone Smith. *See* Garcia Dep. at 33-35.

[6]To the extent Smith objects to this statement of fact offered by District 219, she does so to deny to the extent that it suggests that Degelmann's monitoring was uniformed, without reference to specific identities. *See* Pl.'s LR 56.1 (b)(3)(A) ¶ 94. Smith's citation to additional

### ii. **Mendes' Alleged Harassment**.

Additionally, Smith argues that District 219, through Degelmann, permitted Mendes to verbally abuse her in that he confronted, threatened, humiliated and spoke rudely to her in front of others. Second Am. Compl. at Count I ¶ 7(c); Def.'s LR 56.1(a)(3) ¶¶ 111-13. Yet, in her memorandum in opposition to summary judgment, Smith devotes only three sentences in a fifteen page memorandum to a "discussion" of her allegations against Mendes, see Pl.'s Resp. Def.'s Mot. Summ. J. at 6, while her statement of additional facts devotes only part of one of seventy-two paragraphs to Mendes. *See* Pl.'s LR 56.1(a)(3)(B) ¶ 29. Thus, while Smith alleges multiple acts, she offers evidence of one incident, namely, the early 2002 yelling incident which allegedly caused her to suffer a migraine headache. Further, and from what the Court parses out of the pleadings submitted in connection with the parties' summary judgment briefings, Mendes commented on one occasion that "it's not who you know, it's who you blow." Def.'s Mem. Supp. Summ. J. at 9.

As the Seventh Circuit pointed out, "[i]t is well settled that 'relatively isolated instances of non-severe misconduct will not support a claim of hostile environment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 646 (7th Cir. 2005) (citing *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993)). Moreover, "pervasiveness and severity are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute." *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 951 (7th Cir.2005) (internal quotation omitted). Here, and based on the parties

---

facts supporting her response, if true, would only establish that Degelmann did not order Peterson to monitor other employees. *See* Pl.'s LR 56.1(b)(3)(B) ¶¶ 20, 24. Moreover, one paragraph, Paragraph 40, points to Garcia's testimony that Degelmann monitored others "infrequently." *Id.* ¶ 40.

pleadings, it appears that Mendes' alleged hostility to Smith was isolated and not particularly severe, notwithstanding the fact that she alleges she suffered from a migraine headache as a result of yelling incident. Though Smith's allegation that Mendes yelled at her causing her a migraine headache is more serious than cases involving mere teasing or offhand comments, of which Mendes' "it's not who you know" comment undoubtedly qualifies, Smith's isolated allegations fail to rise to the level of severity found in cases where the Seventh Circuit has found conduct an actionable hostile work environment. *See, e.g., Loughman v. Malnati Org. Incorp.*, 395 F.3d 404, 408 (7th Cir. 2005) (rejecting defendant's argument that "three isolated incidents" did not create a hostile work environment where the plaintiff "was not complaining merely of inappropriate jokes or comments, though she put up with those as well, but of serious physical violations"); *Rizzo v. Sheahan*, 266 F.3d 705, 712 (7th Cir. 2001) (comments expressing defendant's sexual desire for plaintiff's fifteen-year-old daughter constituted severely offensive conduct and were "significantly more offensive than the typical crass comments we have found to be insufficient to constitute harassment in other cases"). As a result, Smith's hostile work environment claim must fail.

### C. *Smith's Failure to Accommodate Allegation*.

The final issue the Court must consider with respect to Smith discrimination count is her allegation that Degelmann "prohibit[ed] at least one other employee of Defendant from relieving Plaintiff while at [Niles West's front] reception desk, while knowing full well that Plaintiff suffered and was suffering from a physical condition that required her to have access to rest room facilities on short notice." Second Am. Compl. at Count I ¶ 7(e).[7] In support of summary judgment, District

---

[7]Though Smith alleges a failure to accommodate within her charge of sex discrimination, the Court notes that under the liberal federal pleading standards, District 219 had notice of Smith's allegation, particularly where she included a failure to accommodate based on a spastic

219 only addresses this allegation in a footnote, contending that it falls outside the scope of her February 2002 charge of discrimination because Smith's deposition "testimony reveals for the first time that an employee was not allowed to relieve her at the front desk occurred on May 26, 2002." Def.'s Mem. Supp. Mot. Summ. J. at 3 n.6 (citing Def.'s LR 56.1(b)(3) ¶ 87).[8] Though District 219 devotes only a footnote to Smith's disparate treatment allegation, Smith devotes even less attention as her response and statement of additional facts are silent regarding the issue.

Regardless, the Seventh Circuit "has adopted a liberal standard for reviewing the scope of [a] charge and has held that all claims of discrimination are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005) (internal quotations omitted). As noted by a district court in Indiana, there exists "a line of cases which allows [*sic*] a plaintiff to pursue a claim of *retaliation* without filing a subsequent charge with the EEOC." *Steffen v. Meridian Life Ins. Co.*, No. IP 84-1693-C, 1986 WL 25431, at *2 (S.D. Ind. May 14, 1986) (citing *Almendral v. New York State Office of Mental Health*, 743 F.2d 963 (2d Cir. 1984); *Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984); *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. 1981); *Jeter v. Boswell*, 554 F. Supp. 946 (N.D. W.Va. 1983)) (emphasis added). The *Steffen* court noted that "[i]n each of these cases . . . the discriminatory act not included in the charge of discrimination occurred subsequent to the filing of the EEOC charge," concluding that "in these cases, the courts reasoned that '[w]here discriminatory actions continue after the filing of an EEOC complaint . . . the purposes of the statutory scheme are

---

colon/irritable bowel in her charge cross-filed with the EEOC and IDHR.

[8]Smith's response to Paragraph 87 of District 219 statement of facts is silent as to that paragraph. Thus, it is deemed admitted. *See* N.D. ILL. R. 56.1.

-19-

not furthered by requiring the victim to file additional EEOC complaints . . . and the courts permitted the subsequent claims if the acts were reasonably related or could reasonably [have been] expected to grow out of the [EEOC] charge of discrimination." *Id.* (citing *Waiters,* 729 F.2d at 237; *Almendral,* 743 F.2d at 967). *Cf. Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 550 (7th Cir. 2002) (noting that the Seventh Circuit "has allowed plaintiffs to proceed on claims not explicitly set forth in a charge of discrimination if the claim is like or reasonably related to the EEOC charges, and the claim in the complaint reasonably [could] be expected to grow out of an EEOC investigation of the charge").

Here, like in the retaliation context, the Court notes that Smith's failure to accommodate allegation, based in part on her testimony that she was not relieved from the reception desk in May 2002 could reasonably be expected to grow out of her February 2002 charge of discrimination. Indeed, in that charge, Smith specifically alleges that she was denied a reasonable accommodation "[f]rom January 2001, and *continuing* until the present (February 14, 2002) . . . ." Pl.'s EEOC Charge No. 2002CF1835 (emphasis added). Thus, the fact that Smith later testified that she was denied an accommodation in May 2002, approximately three months after she cross-filed her charge of discrimination is not surprising given that charge's allegation regarding the continuing nature of District 219's accommodation denial. As a result, the Court declines to find that *one* denial of an accommodation to Smith in May 2002 was outside the scope of her February 2002 charge, particularly where the statutory scheme at issue would not be furthered by requiring Smith to file or amend her charge. Accordingly, Smith may proceed to trial on the failure to accommodate allegation.

-20-

## II.    Smith's Retaliation Claim

Smith also alleges that District 219 retaliated against her for engaging in statutorily protected activity in violation of both Title VII and the ADA. As noted earlier, District 219 moves for summary judgment on Smith's retaliation claim for procedural and factual reasons. Procedurally, it argues that Smith's Title VII retaliation is outside the scope of her discrimination charge and that her ADA retaliation claim is untimely. Def.'s Mot. Summ. J. at 5-6. Factually, District 219 contends that Smith is unable to establish a *prima facie* case of retaliation in that she has not suffered an adverse employment action, adding that even if she were able to establish a *prima facie* case, it has asserted "a legitimate, non-invidious reason for all actions concerning Smith." *Id.* The Court addresses each argument in turn.

### A.    District 219's Procedural Arguments Against Smith's Retaliation Claim.

District 219 contends that Smith's ADA retaliation claim is untimely as it was brought "almost two years after the right-to-sue letter was issued." Def.'s Mem. Supp. Summ. J. at 11. Thus, in effect, District 219 argues that Smith was sleeping on her rights. As a general rule, "[u]nder the ADA, ADEA, and Title VII, a plaintiff must file her suit within 90 days from the date the EEOC gives notice of the right to sue." *Houston v. Sidley & Austin,* 185 F.3d 837, 838-39 (7th Cir. 1999) (citing 42 U.S.C. § 12117(a); 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1)). The failure to timely file is great as it may result in the dismissal of the plaintiff's claim. *See Luckett v. Rent-A-Center, Inc.,* 53 F.3d 871, 872-73 (7th Cir. 1995). However, the Court disagrees that Smith's ADA claim is time-barred because it relates back to her initial, timely filed complaint. In reaching this position, the Court finds Judge Castillo's opinion in *Cervantes v. FCC National Bank*, No. 98 C 6730, 2000 WL 283973, at *1 (N.D. Ill. Mar. 14, 2000), as instructive.

In *Cervantes*, a female plaintiff timely filed a four count complaint alleging breach of contract, national origin discrimination, retaliation and defamation. *Id.* at *2. Nearly one year later, she amended her complaint in order to add a constructive discharge claim. *Id.* However, the defendant sought dismissal of that claim and argued that it was "untimely because [the plaintiff] failed to amend her original complaint to include her Constrictive Discharge Claim within 90 days of receiving her . . . right-to-sue letter." *Id.* In rejecting the defendant's argument, the district court applied the "relation back" doctrine. The court noted that pursuant to Rule 15(c)(2) of the Federal Rules of Civil Procedure, it "may allow [the plaintiff] to amend her complaint to include a constructive discharge claim if her claim arises out of the same "conduct, transaction, or occurrence" set forth in her original complaint." *Id.* Thus, in applying the relation back doctrine to the facts of the case, the court concluded that the plaintiff's claim "ar[ose] out of the same core of facts or conduct alleged in her original complaint," permitting her to proceed. *Id.* at *6. *See also Graham v. Gendex Med. X-Ray, Inc.*, 176 F.R.D. 288, 290 (N.D. Ill. 1997) (rejecting defendant's argument that plaintiff's second amended complaint was time-barred since it attempted to name a new defendant after the running of the 90-day limitation period where second amended complaint related back to a timely filed original complaint).

Under the facts of this case, the Court notes that Smith's claim for retaliation under the ADA relates back to her timely filed claim for retaliation under Title VII. Both claims rely not only on the same *core* of facts or conduct, but on *identical* facts or conduct, namely Degelmann's: (1) reassignment of Smith to guard Niles West's back door, (2) denying her the opportunity to drink beverages while on duty, (3) continuing to monitoring Smith (4) "abruptly walking" toward plaintiff's security post and staring at her "in an intimidating manner" and (5) by verbally harassing

her in referring to her as "Cleopatra." *Compare* Compl. ¶ 8 *with* Second Am. Compl. ¶8 (containing identical factual bases for Smith's ADA and Title VII retaliation claims). Significantly, though District 219 contends that Smith's ADA claim is untimely, it does not assert that her original complaint was untimely, nor could it. As a result, the Court rejects District 219's argument that Smith's ADA claim is time-barred, particularly in light of the principles of Rule 15(c)(2). *See* *Cervantes*, 2002 WL 283973, at * 6 ("It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits . . . . To this end, amendments pursuant to Rule 15(c) should be freely allowed.") (quoting *Staren v. Am. Nat'l Bank & Tr. Co.,* 529 F.2d 1257, 1263 (7th Cir. 1976)).

Furthermore, District 219 argues that Smith's Title VII retaliation claim is outside the scope of her discrimination charge. Specifically, the District asserts that "Smith's gender discrimination retaliation claim is not the same or reasonably related to her ADA charge of discrimination [and] is therefore barred." Def.'s Mem. Supp. Summ. J. at 12. In response, Smith concedes that "[t]he retaliation charge filed with the Illinois Human Rights Commission neglects to describe properly the original claims made in the original charge of discrimination." Pl's Resp. Mot. Summ. J. at 11. She notes that the original charge "states discrimination charges under both the ADA and Title VII" but adds that her retaliation charge "neglected to completely describe" the bases upon which she filed her original charge. *Id.* at 12. Thus, she contends, she should not be prejudiced because of "a draftsman's misdescription in the retaliation charge of the actual bases upon which the original charge of discrimination was in fact filed and asserted." *Id.*

Indeed, in reviewing the right-to-sue letter issued to Smith regarding her retaliation claim, the letter does not reference a "right to institute a civil action against [District 219] under" Title VII,

but rather solely references a right-to-sue pursuant to (1) "Title I of the Americans with Disabilities Act of 1990," (2) "42 U.S.C. 12111, et seq., and," (3) "Title V, Section 503 of the Act, 42 U.S.C. 12203." Right-to-Sue Letter Re: EEOC Charge No. 21BA300665 (Feb. 3, 2002). However, in reviewing the retaliation charge referenced in the February 3, 2002 right-to-sue letter, the Court notes an inconsistency among the paragraphs of Smith retaliation charge. Specifically, though the "PRIMA FACIE ALLEGATIONS" paragraphs of the charge solely reference "handicap discrimination," *see* EEOC Charge No. 2003CF1653 at ¶¶ I(B)(1) & II(B)(1), the "ISSUE/BASIS" paragraphs make no reference to the ground for Smith's retaliation claim. Rather, those paragraphs simply highlight that the work station reassignment and harassment were in retaliation for Smith's filing of her earlier charge, based on both handicap and gender discrimination grounds. *Id.* at ¶¶ I(A) & II(A). *See also* EEOC Charge No. 2002CF1835.

Smith should not be prejudiced by the inconsistency inherent in her retaliation charge, particularly in light of the line of cases discussed above which permit a plaintiff to pursue a retaliation claim without filing a subsequent charge of discrimination. *See Steffen,* 1986 WL 25431, at *2 (citing *Almendral,* 743 F.2d at 963; *Waiters,* 729 F.2d at 233; *Gupta,* 654 F.2d at 411; *Jeter,* 554 F. Supp. at 946). This is not a case where Smith did not file a retaliation charge then later sought to add a retaliation claim to her complaint. Rather, Smith timely filed a retaliation charge, timely filed a complaint for retaliation under Title VII, then later sought to add the ADA as another legal basis for her retaliation claim. Furthermore, Smith's Title VII retaliation claim is reasonably related to her ADA charge as both are based on *identical* factual allegations. *Cf. Peters,* 307 F.3d at 550 (noting that the Seventh Circuit "has allowed plaintiffs to proceed on claims not explicitly set forth in a charge of discrimination if the claim is like or reasonably related to the EEOC charges, and

the claim in the complaint reasonably [could] be expected to grow out of an EEOC investigation of the charge"). As such, the Court declines to find Smith's Title VII retaliation claim as outside the scope of her charge of discrimination. Accordingly, the Court turns to District 219's arguments regarding the merits of Smith's retaliation claims.

**B.**  *District 219's Merit Based Arguments Against Smith's Retaliation Claims.*

Pursuant to Title VII, an employer may not retaliate against an employee who has "opposed any practice made an unlawful employment practice by this subchapter . . . or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 42 U.S.C. § 2000e-3(a). "In order to prevail on a claim of retaliation, a plaintiff must either offer direct evidence of retaliation, or proceed under a burden-shifting method." *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 440 (7th Cir.1996)).

District 219 argues that "Smith did not suffer an adverse employment action in retaliation for her filing a Charge of Discrimination" contending that "[t]here is no direct or indirect evidence of acts that constitutes [*sic*] retaliation." Def.'s Mot. Summ. J. at 5-6. Additionally, District 219 argues that it "has a legitimate non-invidious reason, reason [*sic*] for all actions concerning Smith." *Id.* at 6. In response, Smith devotes only the following paragraph to responding to District 219's multiple arguments regarding the merits of her retaliation claim:

> On the specific question of whether the Defendant's back-door assignment of Plaintiff and other conduct complained of as being retaliatory to Plaintiff's assertions of her legal rights are so insignificant as to warrant the grant of summary judgment, it should be noted that *Wooten* [v. *Fortune Brands*, No. 98 C 4603, 2001 WL 55517, at *1 (N.D. Ill. Jan. 11, 2001)] advises that the timing of the conduct may of itself be circumstantial evidence of retaliatory motive, and sufficient to allow the case to go to the trier of fact on the issue of causation. Here, considering particularly the testimony of Roger Garcia and the Affidavit of John Peterson regarding the assignments made to Plaintiff after the filing of her charge of discrimination, there

is more than sufficient evidence of retaliatory motive in the described conduct here to compel the submission of the retaliation claim to the trier of fact.

Pl.'s Resp. Def.'s Mot. Summ. J. at 10. Thus, by arguing causation, it appears that Smith relies on the direct method.

Under the direct method, Smith must "show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two." *Moser*, 406 F.3d at 903. Smith contends that her reassignment from Niles West's front entrance to the school's south entrance was in retaliation to her filing of a charge of discrimination. Second Am. Compl. ¶ 8(a). Further, she contends Degelmann harassed her by denying her the opportunity to drink beverages while at the south entrance post, monitored her through the security camera system, abruptly walked to her security area and intimidatingly stared at her, and made disparaging remarks by referring to her as "Cleopatra" and as a "dumb broad" to other people. See Second Am. Compl. ¶ 8(b)-(f). However, after careful review, the Court notes that Smith is unable to meet the second and third prongs under the direct method.

First, the Court notes that Smith fails to establish that she suffered an adverse employment action during the 2002-03 school year. As with her discrimination claim for the 2001-02 school year, Smith must show that District 219 subjected her to an adverse employment action. As found above, Smith's assignment to Niles West's front door was not an adverse employment action. Likewise, Smith's reassignment to the guard the south entrance of Niles West cannot be considered an adverse employment action because it was the equivalent of a lateral transfer, not actionable in this Circuit. *Stutler v. Ill. Dept. of Corrections*, 263 F.3d 698, 702 (7th Cir. 2001) ("We have repeatedly held that a lateral transfer without a loss in benefits does not constitute an adverse

employment action."). As admitted, Smith's pay rate, job title and employment benefits did not change when she was reassigned from the front to the south entrance. Def.'s LR 56.1(a)(3) ¶¶ 137-39. Moreover, her duties at both entrances including monitoring those who entered the building. *Id.* ¶ 140. While Smith admits that she was "bored" while stationed at the south entrance, *see id.* ¶ 129, the fact that Smith did not like her reassignment is irrelevant where there is no evidence that it decreased her responsibilities or benefits in any way when compared to her post at the front entrance. *See Stutler*, 263 F.3d at 702-03.

Secondly, Smith's allegations of retaliatory harassment by Degelmann also fail to rise to an actionable adverse employment action. While "[r]etaliatory harassment by co-workers or a supervisor can rise to [the level of an adverse employment action] if it is severe enough to cause a significant change in the plaintiff's employment status," Smith has not shown that her allegations rose to that level. *Stutler,* 263 F.3d at 703. Smith has not offered any admissible evidence that Degelmann monitored her through the security system. *See supra* at 15-16. Furthermore, as the Seventh Circuit has previously found on similar facts, the allegation that Degelmann would abruptly walk to her security area and intimidatingly stare at her is trivial. *See Bell v. Envtl. Prot. Agency,* 232 F.3d 546, 555 (7th Cir. 2000) (finding that a plaintiff's assertions that her supervisor "refuses to greet her or speak to her and that he cancelled a conference called by her" to be "trivial matters that do not rise to the level of actionable retaliation").

Similarly, Degelmann's assorted comments do not create an adverse employment action. Smith's allegation that Degelmann referred to her as a "dumb broad" was made outside of her presence, thus, it is less probative than if it were made when she was present. *Cf. Mannie*, 394 F.3d at 983 (declining to find an objectionably hostile work environment where conduct forming "the

basis of [a plaintiff's] claim consist[ed] of derogatory statements made by supervisors and co-workers outside of her hearing"). Moreover, Degelmann's single instance of referring to Smith as "Cleopatra," assuming *arguendo* that "Cleopatra" could be an objectionably offensive comment, is nothing more than the occasional, coarse banter of a boorish worker. *Whittaker*, 424 F.3d at 646. *See also Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 858 (7th Cir.1999) ("It is not enough that a supervisor . . . fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor.")

Finally, the Court declines to find an adverse employment action based on Smith's allegation that she was denied the opportunity to drink beverages while on duty based on her admissions to District 219's statement of facts. As admitted by Smith, "[i]t is against Department of Security policy for security officers, including Smith, to carry food or beverages around the building. Every security officer received a memorandum regarding this policy." *See Britton v. U.S.*, 133 F.3d 925 (9th Cir. 1997) (declining to find that an employer's issuance of "a warning for eating a banana while on duty" where employee failed to adequately allege it "materially changed the terms or conditions of his job").

Even if Smith were able to show that she suffered an adverse employment action, which she cannot, the Court points out that Smith would be unable to show a causal connection between her protected expression and the alleged adverse employment actions. In attempting to argue a causal connection such as to get her retaliation claim to a trier of fact, Smith first relies on a timing argument. *See* Pl.'s Resp. Def.'s Mot. Summ. J. at 10. As the Seventh Circuit recently noted, "[w]hen an adverse employment action follows on the *close* heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected

conduct, the causation element of the *prima facie* case is typically satisfied." *Culver v. Gorman & Co.,* 416 F.3d 540, 546 (7th Cir. 2005) (emphasis added). But, as the time between the protected activity and adverse action increases, the suspicion of causation weakens. *Davidson v. Midelfort Clinic,* 133 F.3d 499, 511 (7th Cir. 1998). Ultimately, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001); *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir. 1992)).

In the present case, a close temporal proximity between Smith's protected activity and the allegedly adverse employment actions imposed against her is noticeably absent. Smith filed her charge of discrimination in February 2002. *See* EEOC Charge (Feb. 14, 2002). Her retaliation charge, filed in December 2002, cites to allegedly retaliatory acts which occurred between September and December 2002, a range of seven to ten months *after* Smith engaged in a statutorily protected activity. *See* EEOC Charge (Dec. 3, 2002). Significantly, the Seventh Circuit has declined to find temporal proximity in periods much shorter than that alleged by Smith and also for periods similar in length to that alleged. *See Contreras,* 237 F.3d at 765 (finding a separation of twenty-six days as insufficient to create an issue of fact as to a causal connection); *Juarez v. Ameritech Mobile Commc'ns, Inc.* 957 F.2d 317, 321 (7th Cir. 1992) (finding a six month separation as insufficient).

While this does not mean that Smith "is precluded from making out a prima facie case of retaliation, [she must provide] additional proof of a causal nexus" if she is to set forth a *prima facie*

-29-

case under the direct method. *Davidson,* 133 F.3d at 511 (citing *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 891 n.6 (7th Cir. 1996)). Thus, Smith points generally to the "testimony of Roger Garcia and the Affidavit of John Peterson regarding the assignments made to Plaintiff after the filing of her charge of discrimination" as evidence of such additional proof, without pointing to specific facts which would aid this Court in its analysis. *See* Pl.'s Resp. Def.'s Mot. Summ. J. at 10. Yet, in reviewing Smith's Local Rule 56.1 statement of additional facts, examining closely Smith's paragraphs citing either Garcia's testimony or Peterson's affidavit during the relevant time period, *i.e.* the 2002-03 school year, the Court finds that Smith has not met her burden to present sufficient proof of a causal nexus. Smith's citations do not provide evidence showing that District 219, through Degelmann, "would not have taken the alleged adverse action[s] '*but for*' the plaintiff's protected activity." *Wells v. Unisource Worldwide, Inc.,* 289 F.3d 1001, 1008 (7th Cir. 2002). *See also id.* (noting an employee's failure "to point to any evidence in the record to support her argument that [her employer] would not have made the [adverse employment action] unless she had (more than one year earlier) complained it had discriminated against her"). Instead, Smith's citations simply cite to testimony and attestations which would support Smith's claims that she was subjected to adverse employment actions, a fact which, for purposes of determining whether Smith can show a causal connection, this Court has assumed. If anything, they show Garcia and Peterson's subjective beliefs on non-issues such as whether Degelmann liked Smith and whether they felt Smith's job assignments were "the best use of her skills." *See, e.g.,* Pl.'s LR 56.1(b)(3)(B) ¶ 22 (stating that "it became clear to [Peterson] from Degelmann's conduct that Degelmann had a serious dislike for Plaintiff"); ¶ 23 ("Peterson considered [a proposed assignment] a definite waste of Plaintiff's time, considering her experience and tenure at the District as a security officer."); ¶ 41 ("Garcia argued

against [Smith's assignment to Niles West's south end], believed confining Plaintiff to a single location was not the best use of her skills, and advised Degelmann of this objection consistently."). Moreover, in one citation, Smith all but admits she does not have any evidence to link her alleged adverse employment actions when she notes "[a]s to the genesis of Plaintiff's front desk and rear door assignments in the 2001-2002, and 2002-2003 school years, the record is unclear." Pl.'s LR 56.1(b)(3)(B) ¶ 58.

Because Smith is unable to establish a *prima facie* case of retaliation under the direct method, the Court would normally turn to see if she was able to set forth a *prima facie* case under the indirect method. However, "whether a plaintiff proceeds under the direct or indirect method, evidence establishing that an adverse employment action has actually taken place is an essential element of the claim." *Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1029 (7th Cir. 2004). But, as discussed above, Smith is unable establish that she suffered an adverse employment action. Thus, she is likewise unable to proceed on her retaliation claims pursuant to the indirect method. Accordingly, the Court dismisses Smith's claims of retaliation brought pursuant to Title VII and the ADA.

## Conclusion

For the reasons provided above, District 219's motion for summary judgment on Count I is granted in part and is denied in part. Furthermore, District 219's motion as to Count II is granted in its entirety. As to Count I, the Court dismisses Smith's disparate treatment and hostile work environment claims. However, Smith may proceed to trial on the discrete issue of whether District 219 failed to accommodate her disability while she was posted at Niles West's front door.

Additionally, the Court declines District 219's invitation to award it fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure as District 219 has not met the requirements to seek relief under Rule 11. *See, e.g.,* Fed. R. Civ. P. 11(c)(1)(A); *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999).

Finally, District 219's document titled "Defendant Niles Township High School's Motion to Strike Certain Exhibits, Responses, and Additional Facts Set Forth By Plaintiff Jacquelyn Smith In Opposition To Niles Township's Motion For Summary Judgment" [doc. no. 53], currently shown as a pending motion, but waived by the District in its document titled "Defendant's Response to Plaintiff's Statement of Additional Facts" [doc. no. 55]. Therefore, it is hereby dismissed.

**SO ORDERED**

**ENTERED:** MAR 2 2 2006

**UNITED STATES MAGISTRATE JUDGE**